DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} The trial court determined that Stephanie Nguyen was constructively evicted from commercial space she leased from GMS Management Co. Inc. and that, therefore, GMS was not entitled to judgment against her for the balance of the monthly payments due under the lease. Because GMS forfeited most of the arguments it has made to this Court by not making them to the trial court, failed to properly develop arguments before this Court, and made arguments that simply do not assist it, this Court affirms.
 FACTS {¶ 2} In 2002, Ms. Nguyen entered into a five-year lease with GMS for space at the College Hills Shopping Center in Wooster and opened a nail salon in that space. At trial, Ms. Nguyen and her husband, a co-owner of the business, testified that water leaked into the space from the roof and around the front window. They testified that they complained to GMS *Page 2 
numerous times and that GMS made some efforts to repair the leaks. They further testified, however, that those efforts were unsuccessful, that the leaks interfered with their business, and that they eventually vacated the premises 14 months early.
 {¶ 3} GMS sued Ms. Nguyen for the remaining 14 monthly lease payments, plus certain other damages to which it claimed to be entitled under the lease. Ms. Nguyen filed a counterclaim in which she sought damages she allegedly suffered as a result of the leaks during the time she occupied the space.
 {¶ 4} Following a bench trial, the trial court determined that neither party was liable to the other. It held that Ms. Nguyen had failed to present "relevant, competent, and credible evidence" in support of her counterclaim, that the damages GMS sought beyond the monthly lease payments amounted to an unenforceable penalty, and that Ms. Nguyen was relieved from the obligation to pay the remaining 14 monthly lease payments because GMS had constructively evicted her. GMS has appealed the trial court's determination that Ms. Nguyen is not liable for the remaining monthly lease payments and its determination that she is not liable for damages beyond those payments.
 VARIOUS LEASE PROVISIONS {¶ 5} GMS's first assignment of error is that it was entitled to judgment against Ms. Nguyen based on a number of provisions included in the lease. For various reasons, none of the provisions relied upon by GMS lead this Court to reverse the trial court's judgment.
 {¶ 6} The first lease provision relied upon by GMS is subpart (F) of Section 38. Section 38 deals with various possible defaults by Ms. Nguyen and says that, in the event of a default, GMS may "re-enter the Premises by summary proceedings or otherwise, and may dispossess the Tenant. . . ." Subpart (F) provides, among other things, that, "[i]n the event of *Page 3 
such re-entry, the balance of the rent and other charges to become due during the Term of this Lease shall be accelerated and shall be immediately due and payable. . . ." Based on that part of subpart (F), GMS has argued: "Thus, there is no question that Tenant remains liable for all rent for the remainder of the term." Subpart (F) only becomes relevant, however, if the tenant has defaulted under the lease. Inasmuch as the trial court found that Ms. Nguyen properly terminated the lease because she was constructively evicted, subpart (F) of Section 38 is of no assistance to GMS.
 {¶ 7} GMS has next cited subpart (F) of Section 8 of the lease as support for the idea that the trial court incorrectly failed to award it damages in addition to the monthly lease payments it claimed Ms. Nguyen owed. This subpart (F) provides that the shopping center is an "inter-dependent enterprise and its success is dependent upon the opening and continued operation of [Ms. Nguyen's] business in accordance with the terms of this Lease." It further provides that, if Ms. Nguyen should "vacate, abandon, or desert the Premises," GMS's damages will be difficult or impossible to determine and that, unless GMS terminates the lease, Ms. Nguyen "shall pay to [GMS], in addition to fixed and additional rent, 1/15th of the monthly installment of fixed rent for each day the Premises and [Ms. Nguyen's] business therein are not continuously and uninterruptedly operated by [Ms. Nguyen]."
 {¶ 8} As mentioned previously, the trial court determined that the damages GMS sought beyond the monthly lease payments amounted to an unenforceable penalty. GMS's entire argument to this Court regarding its claimed entitlement to additional damages under Section 8(F) consists of three sentences: "[T]he lease also provided for additional damages in the event that [Ms. Nguyen] improperly vacated the Premises. . . . Thus, when [Ms. Nguyen] improperly *Page 4 
vacated the Premises, [she] was in default and became liable for additional damages. These damages are in addition to the normal base rent."
 {¶ 9} While contractual liquidated damage clauses are enforceable, penalties are not. "The test of whether a contractual provision is a valid liquidated damages provision or a penalty is whether the objective of the provision is reasonable compensation for actual damages." USSGreat Lakes Fleet Inc. v. Spitzer Great Lakes LTD., 85 Ohio App. 3d 737,740 (1993) (citing Cad Cam Inc. v. Underwood, 36 Ohio App. 3d 90, 91
(1987)). GMS has not even attempted to argue to this Court that the damages it sought from Ms. Nguyen in addition to the monthly lease payments were "reasonable compensation for actual damages." This Court will not develop an argument for an appellant who fails to make one for itself. See App. R. 16(A)(7). In the absence of any argument that Section 8(F) of the lease is not an unenforceable penalty, that Section is of no assistance to GMS.
 {¶ 10} The next lease provision relied on by GMS is subpart (B) of Section 41. That subpart provides that, if GMS breaches any of its obligations under the lease, Ms. Nguyen is not entitled to terminate the lease or file a claim for constructive eviction and that, rather, "[her] exclusive remedy shall be limited to monetary damages or injunctive relief." According to GMS, the trial court's determination that Ms. Nguyen legitimately terminated the lease in response to GMS's constructive eviction "was clearly in error in light of the plain and unambiguous language of the Lease."
 {¶ 11} The question of whether a provision in a commercial lease waiving a tenant's right to claim constructive eviction is enforceable is interesting. In Leider v. 80 William St. Co. Inc., 255 N.Y.S.2d 999,1001-02 (N.Y.App.Div. 1964), a New York appellate court determined that a provision in a commercial lease that no act by the landlord "shall constitute an eviction" *Page 5 
was not enforceable because it was "not consonant with common sense or with the mutual intent of the parties." In contrast, in Lee v. PlacerTitle Co., 33 Cal.Rptr.2d 572, 577 (Cal.App. Dep't Super. Ct. 1994), a California appellate court held that a provision in a commercial lease that "[i]n no event shall Tenant have the right to terminate this Lease as a result of Landlord's default and Tenant's remedies shall be limited to damages and/or an injunction" precluded the tenant from vacating the premises and asserting that it had been constructively evicted. Not surprisingly, considering the quality of advocacy in this case, neither party cited either of these cases or any other law relevant to this question. See Restatement (Second) of Property § 6.1 cmt i (1977).
 {¶ 12} Further, and just as importantly, GMS has failed to direct this Court to any point in the record at which it brought Section 41(B) to the trial court's attention and, having thoroughly reviewed that record, this Court has been unable to find any mention of that subpart. While GMS has argued that the trial court erred by "ignoring the plain and unambiguous lease language," at least in regard to Section 41(B), the trial court's ignoring of the lease language is understandable in light of GMS's own ignoring of that language.
 {¶ 13} A party who fails to call a claimed error to the trial court's attention at a time when it can be avoided or corrected forfeits the right to argue that error on appeal. State v. Williams,51 Ohio St. 2d 112, paragraph one of the syllabus (1977), vacated in part on other grounds, 438 U.S. 911 (1978). Having failed to call Section 41(B) to the trial court's attention, GMS has forfeited its opportunity to argue that the trial court's decision should be reversed because of that subpart's inclusion in the lease.
 {¶ 14} GMS has next cited Section 52 of the Lease: "The Tenant shall have no right to quit the Premises, cease to operate its business, cancel or terminate this Lease except as said right *Page 6 
is expressly granted to the Tenant herein." GMS did draw the trial court's attention to that section, although it did not argue that it prevented Ms. Nguyen from terminating the lease based upon GMS's constructive eviction of her. Rather, it appeared to argue just the opposite, stating that whether Ms. Nguyen had been constructively evicted was a question of fact: "Which then brings us to section 52 at page 40 where there's a provision concerning termination where it indicates that tenant shall have no right to quit the premises, cease to operate his business, cancel or terminate this lease except as the right is expressly granted to the tenant herein. Which I don't believe is granted under these circumstances, again it is obviously a question of fact for Your Honor. Finally, I do have a case that I would provide a copy to counsel and for the Court if I could approach, part of the 11th Appellate District that addresses some of the commercial lease, got an HVAC system and so forth. You know, in terms of a constructive eviction I don't think we have that here." Having failed to argue to the trial court that Section 52 prevented Ms. Nguyen from claiming she had been constructively evicted, GMS forfeited the right to make that argument on appeal.
 {¶ 15} The final lease provision relied on by GMS is subpart (A) of Section 21. GMS has correctly pointed out that, under that subpart, Ms. Nguyen was responsible for maintenance of the HVAC system that served the leased space, the front window frame, and the front window. According to GMS, the ceiling leak was caused by the HVAC. The record, however, supports no such conclusion. Although GMS's maintenance man testified that the ceiling leak was in the vicinity of the air conditioning unit, he never suggested it was caused by the air conditioning unit. In fact, he seemed to speculate that the leak in the space's flat roof was caused by heat: "And he showed me some areas where I guess when the heat heat up and the tar raise up and it was somewhere water was getting in there." Further, there was no suggestion that the *Page 7 
leak at the front window was caused by poor maintenance of either the window or its frame. Rather, the maintenance man testified that it was caused by the repeated freezing of a drain pipe, which GMS finally replaced after Ms. Nguyen vacated the premises: "[I]t's a drain pipe — the last drain pipe before it go down to the sewer line. And every year we put heat tape in there to keep the pipe from freezing. And every so often when we get a bad wind storm or snow storm when it's coming through that pipe freezes. And when that pipe freezes we get water come down the canopy and down 1855 front window and stuff and it had a little water damage there." Subpart (A) of Section 21 is of no assistance to GMS.
 {¶ 16} None of the lease provisions cited by GMS support its argument that the trial court erred by determining that Ms. Nguyen properly terminated the lease agreement based on constructive eviction. GMS's first assignment of error is overruled.
 MS. NGUYEN'S COUNTERCLAIM {¶ 17} GMS's second assignment of error, like most of its argument to this Court, is confusing. In part, it seems to be an argument that Ms. Nguyen was time-barred from arguing that she was constructively evicted from the premises because subpart (M) of Section 38 of the lease provides that any defense is barred unless it has been "interpose[d] . . . within six (6) months after the date of the occurrence of the event or of the action [to] which the . . . defense relates." GMS has pointed out that the Nguyens testified that the leaks began during the first year they occupied the premises. GMS has again failed to point to any place in the record at which this argument was raised before the trial court. Further, it has made no argument to this Court about when the repeated leaks reached the point at which Ms. Nguyen was constructively evicted, the event that would have presumably started the running of the six month period in *Page 8 
which she could vacate the premises. To the extent GMS's second assignment of error is based on Section 38(M), it is overruled.
 {¶ 18} The remainder of GMS's argument in support of its second assignment of error appears to relate to Ms. Nguyen's counterclaim. The trial court ruled against her on her counterclaim, and she has not appealed. It is unclear, therefore, why GMS has presented this argument. GMS's second assignment of error is overruled.
 WAIVER {¶ 19} GMS's third assignment of error is that Ms. Nguyen waived the defense of constructive eviction by not raising it in her answer. According to GMS, its trial counsel raised this argument at pages "115 and 166" of the transcript. There is no page 166 of the transcript. And, although GMS's lawyer did say at page 115 of the transcript, during closing argument, that he had first heard Ms. Nguyen's lawyer mention constructive eviction on the day of trial, he did not suggest that Ms. Nguyen had therefore waived the argument. In fact, he seemed to say that whether Ms. Nguyen was constructively evicted was a question that should be decided by the trial court: "The first I heard it from Defense is today. Although it is an issue of constructive eviction that should be described or discussed and laid to rest by the Court, constructive eviction, the matter must be of a substantial nature and so injurious to the tenant as to deprive him of beneficial enjoyment." Having failed to argue to the trial court that Ms. Nguyen forfeited her right to argue she was constructively evicted by not raising it as a defense in her answer, GMS forfeited the opportunity to make that argument to this Court. GMS's third assignment of error is overruled.
 TESTIMONY REGARDING THE LEASE *Page 9 {¶ 20} GMS's fourth assignment of error is that the trial court incorrectly refused to allow it to offer testimony regarding the terms of the lease. At trial, GMS called one of its employees, Patricia Morgan, to the stand and explained to the court that she would testify regarding "accounting and the lease terms." The court noted that the lease was not in dispute and then engaged in a discussion with the parties regarding GMS's claimed damages. Following that discussion, Ms. Morgan testified regarding GMS's efforts to mitigate its damages. The subject of Ms. Morgan testifying about "lease terms" did not come up again, and GMS made no effort to proffer her testimony on that subject. Assuming the exchange between the trial court and GMS's lawyer could be viewed as the trial court refusing to allow Ms. Morgan to testify about the lease terms, GMS's failure to proffer her testimony would prevent this Court from reversing based on that refusal. State v. Hipkins,69 Ohio St. 2d 80, 82 (1982) ("[I]t is well settled that when a court has sustained objections to an inquiry during the examination in chief, a statement must be made as to what the expected answer would be in order that the reviewing court can determine whether or not the [ruling] is prejudicial."). GMS has suggested to this Court that Ms. Morgan would have been able "to direct the Court to the appropriate provisions of the Lease that were obviously not followed when the Court rendered its decision." The lease itself was in evidence, and it was GMS's lawyer's job, through argument, to call the trial court's attention to relevant provisions and explain their relevance. GMS's fourth assignment of error is overruled.
 NEW TRIAL {¶ 21} GMS's final assignment of error is that the trial court incorrectly denied its motion for new trial. Beyond citing Rule 59 of the Ohio Rules of Civil Procedure and parroting some of that rule's provisions, GMS failed to support its motion for new trial with any argument. Its "arguments" to this Court in support of this assignment of error are "the reasons set forth *Page 10 
throughout Assignments of Error 1-4" and the assertion that "[t]he Lease and the evidence clearly entitle Landlord to judgment in its favor." For the reasons GMS's first four assignments of error were overruled, this one is overruled as well.
 CONCLUSION {¶ 22} GMS's assignments of error are overruled. The judgment of the Wayne County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
 Costs taxed to appellant. *Page 11 
WHITMORE, J., CONCURS.
 SLABY, P. J., CONCURS IN JUDGMENT ONLY. *Page 1