[Cite as *Jaber v. FirstMerit Corp.*, 2017-Ohio-277.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

ASHMAHAN "SUE" JABER

    Appellant

    v.

FIRSTMERIT CORP. et al.

    Appellees

C.A. No.     27993

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2014-03-1242

DECISION AND JOURNAL ENTRY

Dated: January 25, 2017

CARR, Presiding Judge.

**{¶1}** Appellant Asmahan "Sue" Jaber appeals the judgment of the Summit County Court of Common Pleas that granted summary judgment in favor of appellees FirstMerit Corporation; FirstMerit Bank, N.A.; Jennifer O'Brien; Shirley Ehrich; and Mary Perry. This Court affirms.

I.

**{¶2}** Ms. Jaber, a naturalized United States citizen originally from Lebanon, had been working for FirstMerit Bank for over thirty years when she was terminated. She subsequently filed a complaint against FirstMerit and three bank managers alleging six claims for relief: retaliation for a wage complaint (invoking R.C. Chapter 4111); discrimination based on age (R.C. 4112.02(A)); discrimination based on national origin (R.C. 4112.02(A)); discrimination based on perceived disability (R.C. 4112.02(A)); retaliatory discharge based on complaints of age, national origin, and perceived disability discrimination (R.C. 4112.02(A)); and wrongful

discharge in violation of public policy (workplace bullying). The defendants answered and each later filed motions for summary judgment. Ms. Jaber opposed the motions for summary judgment, and the defendants replied. Ms. Jaber requested and was granted an extension of time to complete discovery and supplement her brief in opposition to the motions for summary judgment based on that additional discovery. The defendants replied. The trial court held an oral hearing on the motions and, thereafter, granted summary judgment in favor of all defendants. Ms. Jaber filed a timely appeal, raising six assignments of error for review. This Court consolidates some assignments of error to facilitate review.

II.

Summary Judgment Standard of Review

{¶3} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶4} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶5} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

**{¶6}** The non-moving party's reciprocal burden does not arise until after the moving party has met its initial evidentiary burden. To do so, the moving party must set forth evidence of the limited types enumerated in Civ.R. 56(C), specifically, "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact[.]" Civ.R. 56(C) further provides that "[n]o evidence or stipulation may be considered except as stated in this rule."

Application of Federal Law

**{¶7}** The Supreme Court of Ohio has repeatedly held that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42 U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.*, 61 Ohio St.3d 607, 609-610 (1991), quoting *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196 (1981), citing *Republic Steel v. Ohio Civ. Rights Comm.*, 44 Ohio St.2d 178 (1975); *Weiner v. Cuyahoga Community College Dist.*, 19 Ohio St.2d 35 (1969). *See also Koballa v. Twinsburg Youth Softball League*, 9th Dist. Summit No. 23100, 2006-Ohio-4872, ¶ 20. "Thus, 'reliable, probative, and substantial evidence' in an employment discrimination case brought

pursuant to R.C. Chapter 4112 means evidence sufficient to support a finding of discrimination under Title VII." *Plumbers & Steamfitters*, 66 Ohio St.2d at 196.

III.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN ORDERING SUMMARY JUDGMENT ON [MS. JABER'S] CLAIM OF AGE DISCRIMINATION. CONSTRUING THE EVIDENCE IN [MS. JABER'S] FAVOR AS REQUIRED BY CIV.R. 56, REASONABLE MINDS CAN CONCLUDE THAT [MS. JABER] WAS TERMINATED BECAUSE OF HER AGE.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN ORDERING SUMMARY JUDGMENT ON [MS. JABER'S] CLAIM OF DISABILITY DISCRIMINATION. CONSTRUING THE EVIDENCE IN [MS. JABER'S] FAVOR AS REQUIRED BY CIV.R. 56, REASONABLE MINDS CAN CONCLUDE THAT [FIRSTMERIT] UNDERSTOOD THAT [MS. JABER] HAD A DISABILITY, HARASSED HER BECAUSE OF IT RATHER THAN ACCOMMODATE HER AND TERMINATED HER BECAUSE SHE COMPLAINED.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN ORDERING SUMMARY JUDGMENT ON [MS. JABER'S] CLAIM OF NATIONAL ORIGIN DISCRIMINATION. CONSTRUING THE EVIDENCE IN [MS. JABER'S] FAVOR AS REQUIRED BY CIV.R. 56, REASONABLE MINDS CAN CONCLUDE THAT [FIRSTMERIT] DESIRED TO TERMINATE [MS. JABER] BECAUSE OF HER LEBANESE BACKGROUND AND CULTURAL DIFFERENCES.

{¶8} Ms. Jaber argues that the trial court erred by granting summary judgment in favor of FirstMerit on her claims of employment discrimination based on age, national origin, and perceived disability. This Court disagrees.

{¶9} Ms. Jaber's discrimination claims are based on R.C. 4112.02(A) which states that "[i]t shall be an unlawful discriminatory practice * * * [f]or any employer, because of the * * * national origin, disability, [or] age * * * to discharge without just cause * * * or otherwise to

discriminate against that person with respect to * * * any matter directly or indirectly related to employment."

{¶10} No party argues that there was direct evidence of discrimination. In cases of indirect evidence of discrimination, Ohio courts apply the burden-shifting test enunciated in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146 (1983).

> The *McDonnell Douglas* analysis is a three-step procedure that allocates the shifting burdens of production of evidence on the parties. First, the employee must establish a prima facie case of [ ] discrimination. Next, the burden of production shifts to the employer to state some legitimate non-discriminatory reasons for the employee's discharge. Finally, the burden shifts back to the employee to show that the employer's stated reasons were a pretext for [ ] discrimination.

*Wang v. Goodyear Tire & Rubber Co.*, 68 Ohio App.3d 13, 16 (9th Dist.1990).

{¶11} To establish a prima facie case of age discrimination, an employee must show: (1) that she was in the protected age range (at least 40 years old), (2) that she was subjected to an adverse employment action like discharge, (3) that she was qualified for the position, and (4) that she was replaced by a younger worker outside of the protected class. *Wang*, 68 Ohio App.3d at 16. "The test of whether an employee is qualified is whether [s]he is meeting [her] 'employer's legitimate expectations.'" *Brown v. Renter's Choice, Inc.*, 55 F.Supp.2d 788, 793 (N.D.Ohio 1999), quoting *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 548-549 (6th Cir.1991). This determination is "'measured at the time the decision to terminate is made.'" *Brown* at 793, quoting *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir.1990).

{¶12} To establish a prima facie case of national origin discrimination, an employee must show: (1) that she was in a protected class, (2) that she suffered an adverse employment action such as discharge, (3) that she was qualified for the employment, and (4) that comparable,

non-protected employees received more favorable treatment. *Paranthaman v. State Auto Property & Cas. Ins. Co.*, 10th Dist. Franklin No. 14AP-221, 2014-Ohio-4948, ¶ 29; *see also Mensah v. Michigan Dept. of Corrections*, 621 Fed.Appx. 332, 334 (6th Cir.2015).

{¶13} To establish a prima facie case of perceived disability discrimination, an employee must show: (1) that she was perceived as disabled, (2) that the employer took an adverse employment action against her because of the perceived disability, and (3) that the employee, although perceived as disabled, can safely and substantially perform the essential functions of the job in question. *Ames v. Ohio Dept. of Rehab. & Corr.*, 23 N.E.3d 162, 2014-Ohio-4774, ¶ 26; *see also Allen v. totes/Isotoner Corp.*, 123 Ohio St.3d 216, 2009-Ohio-4231, ¶ 47, citing *Hazlett v. Martin Chevrolet, Inc.*, 25 Ohio St.3d 279, 281 (1986). "Ohio disability discrimination law is similar to the Federal Americans with Disabilities Act ("ADA"), and therefore Ohio courts may seek guidance in the interpretation of the Ohio discrimination law from regulations and cases that interpret the ADA." *Ames* at ¶ 26. A disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual, [and includes] being regarded as having such an impairment." 42 U.S.C.A. 12102(1)(A)/(C). "Major life activities" include, inter alia, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C.A. 12102(2)(A).

{¶14} If the plaintiff makes a prima facie showing of discrimination, the burden shifts to the employer to demonstrate a legitimate, nondiscriminatory reason, which includes insubordination, for the adverse employment action. *Allen* at ¶ 5, citing *Hood v. Diamond Prods., Inc.*, 74 Ohio St.3d 298, 302 (1996). If the employer puts forth evidence of a legitimate,

nondiscriminatory reason, the burden shifts back to the employee to demonstrate that the employer's reason is merely a pretext. "To create a question of fact with respect to pretext, the [employee] must demonstrate that the [employer's] proffered reason for firing the employee '(1) had no basis in fact, (2) did not actually motivate [the] discharge, or (3) was insufficient to motivate [the] discharge.'" *Harris v. OHNH EMP, L.L.C.*, 9th Dist. Summit No. 27455, 2015-Ohio-3212, ¶ 15 (9th Dist.), quoting *King v. Jewish Home*, 178 Ohio App.3d 387, 2008-Ohio-4724, ¶ 9 (1st Dist.). We explained:

> "The first type of showing consists of evidence that the proffered bases for the [employee's] discharge never happened and are thus factually false. The third showing ordinarily consists of evidence that other employees not in the protected class were not fired although they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing [the] plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed a suspicion of mendacity. In the second type of rebuttal, the [employee] admits that such conduct could motivate the dismissal. Thus, the [employee] indirectly attacks the credibility of the proffered explanation by showing, through the sheer weight of circumstantial evidence, that an illegal motivation was more likely than the explanation offered by the defendant."

*Harris* at ¶ 15, quoting *Thompson v. Merriman CCRC, Inc.*, 9th Dist. Summit No. 23229, 2006-Ohio-6008, ¶ 23. Further, pretext may be evidenced by showing (1) that other employees outside the protected class behaved in a comparable manner but did not suffer comparable adverse employment actions, (2) the employer's general policies and practices with regard to employees in protected classes, (3) and the employer's reaction to the employee's participation in legitimate activities. *See McDonnell Douglas*, 411 U.S. at 805.

{¶15} This Court assumes for the sake of argument that a genuine issue of material fact exists regarding Ms. Jaber's ability to establish a prima facie case of discrimination based on

age, national origin, and perceived disability. Accordingly, the burden shifts to FirstMerit to demonstrate a legitimate, nondiscriminatory reason for Ms. Jaber's discharge.

{¶16} In its motion for summary judgment, FirstMerit presented evidence that a personal banker's duties include, among other things, helping customers open new accounts; obtain loans, credit, and debit cards; reorder checks; and facilitate other banking business. In addition, personal bankers must call existing customers from a hot list in an attempt to get them to accept additional services. Various bank managers testified during depositions that FirstMerit expects that a personal banker will be able to complete all tasks satisfactorily within a 40-hour work week.

{¶17} FirstMerit further demonstrated that, beginning in the fall of 2011, Ms. Jaber exhibited performance issues, evidenced by customer complaints and incidents of unsecured confidential information. In early September, she received a 90-day written warning enumerating several customer complaints and noting her "poor judgment in exercising [her] responsibilities as a Personal Banker." The customer complaints included failing to submit a credit card application that was six weeks overdue; failing to place check orders for multiple customers, in one case for two months; failing to complete an account upgrade as requested; and losing a check submitted by a customer who fell behind on an automobile loan. In addition, despite an earlier warning, Ms. Jaber had committed various security breaches, including leaving confidential customer information unsecured. FirstMerit informed her that she could face "further corrective action" for violating the directives in the written warning. On September 30, FirstMerit issued her a memo evidencing a "Doc Discussion" during which her branch manager Ms. O'Brien informed her of additional customer complaints. A FirstMerit representative testified during deposition that the bank did not issue another written warning at that time, given

the temporal proximity of the complaints with the ones delineated in the September 9 written warning.

{¶18} Ms. Jaber responded to the written warning, informing FirstMerit that she had been regularly working beyond her scheduled 40-hour work week without clocking in, in an attempt to meet her responsibilities. Based on that disclosure, FirstMerit directed her to submit an itemization of the unauthorized overtime hours she had worked. Ms. Jaber balked, and asserted that she had donated that time and did not wish to be paid. Out of concern for remaining in compliance with federal and state wage and hours laws, however, FirstMerit insisted that she disclose the time she worked off the clock. After four directives from various bank personnel, Ms. Jaber finally disclosed those hours. FirstMerit paid her in excess of $5000.00 for that time based on Ms. Jaber's affirmation that the 176 hours she disclosed covered all the time she had worked off the clock.

{¶19} After becoming aware that Ms. Jaber had been working off the clock, FirstMerit issued a directive to all branch employees not to work off the clock. Despite this directive, Ms. Jaber continued to work off the clock in October and November 2011. In addition, she continued to leave confidential information unsecured on her desk. Based on those continued infractions, FirstMerit issued a last chance memorandum ("LCM") to Ms. Jaber on November 30, 2011, informing her that she would be reviewed for termination if she again worked off the clock, violated company policies, or experienced ongoing performance related issues. Despite these additional directives, Ms. Jaber continued to work off the clock, including on February 4, 2012. On February 17, 2012, FirstMerit issued a memo to Ms. Jaber, informing her that she had violated the LCM for continuing to work off the clock despite repeated directives not to do so, and for additional customer complaints. Those complaints included failing to rewrite a loan

which caused a customer to become delinquent, failing to order new account checks after misplacing documents for over 45 days, completing only one-third of an IRA disbursement transaction, and failing to provide the necessary disclosure forms pursuant to bank policy and federal law in approximately half of the more than 55 account kits Ms. Jaber gave to a certain client.

{¶20} After issuing the LCM violation memo to Ms. Jaber, FirstMerit notified human resources officer Amanda Pruett, who investigated the claimed violations and obtained a statement from Ms. Jaber before presenting Ms. Jaber's file to the performance review committee ("PRC") for a determination of further disciplinary action. Ms. Pruett verified the complaints. The five-member PRC unanimously determined to terminate Ms. Jaber based on her failure to follow policy and procedure. The members of the PRC all testified in their depositions that they determined to discharge Ms. Jaber based on her ongoing disregard for the directive to cease working off the clock, as well as the continuing customer complaints that she had failed to follow through on actions necessary to meet their banking needs. Based on this evidence, FirstMerit met its initial burden of demonstrating legitimate, nondiscriminatory reasons for terminating Ms. Jaber.

{¶21} Ms. Jaber, on the other hand, did not present any evidence to rebut the bank's evidence that she continued to violate policies and procedures. In fact, Ms. Jaber repeatedly admitted during her deposition that she continued to work off the clock despite the directives to cease. Moreover, she admitted to failing to follow through on actions necessary to meet customer banking needs. She merely offered excuses that she was very busy, had misplaced items necessary to complete actions, or forgot to leave herself notes to follow up. Accordingly, Ms. Jaber failed to present any evidence to rebut the bank's evidence demonstrating its

legitimate, nondiscriminatory reasons for terminating her. However, assuming arguendo that a genuine issue of material fact exists in this regard, Ms. Jaber failed to present any evidence of pretext.

{¶22} The bank presented evidence that Ms. Jaber received progressive discipline and multiple warnings and directives to cease her deficient and nonconforming activities. FirstMerit further presented evidence of its concern that it remain in compliance with federal and state wage and hours laws. On the other hand, Ms. Jaber presented no evidence that the reasons asserted by the bank for her termination were untrue. In fact, she admitted the allegations. Moreover, Ms. Jaber did not present any evidence that the bank's concerns for complying with law and meeting customer service satisfaction did not motivate her discharge or was insufficient to support her discharge. Although she presented evidence that the bank had had a "don't ask, don't tell" policy regarding working any necessary hours to get the job done (disputed by the bank), she presented no evidence that any employee besides her continued to work off the clock after the bank directed the cessation of such behavior in September 2011. In addition, she presented no evidence that the other personal banker at the branch received the quantity and type of customer complaints that Ms. Jaber received notwithstanding directives and guidance by bank managers. Based on a thorough review of the record, this Court concludes that FirstMerit met its burden to demonstrate that it was entitled to judgment as a matter of law on Ms. Jaber's three claims alleging employment discrimination. Moreover, we conclude that Ms. Jaber failed to meet her reciprocal burden of presenting evidence to establish the existence of a genuine issue of material fact as to those three claims. Accordingly, the trial court did not err by granting summary judgment in favor of FirstMerit on Ms. Jaber's claims alleging discrimination based on age, national origin, and perceived disability.

{¶23} Ms. Jaber's first, second, and third assignments of error are overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN ORDERING SUMMARY JUDGMENT ON [MS. JABER'S] CLAIM OF RETALIATION FOR REPORTING SHE HAD WORKED OVERTIME OFF THE CLOCK AND FOR BEING SUBJECTED TO DISCRIMINATION. CONSTRUING THE EVIDENCE IN [MS. JABER'S] FAVOR AS REQUIRED BY CIV.R. 56, REASONABLE MINDS CAN CONCLUDE THAT [FIRSTMERIT] SINGLED [MS. JABER] OUT FOR RETALIATORY, DISCRIMINATORY TREATMENT, LEADING INEVITABLY TO HER TERMINATION.

{¶24} Ms. Jaber argues that the trial court erred by granting summary judgment for FirstMerit on her fifth claim alleging retaliatory discharge. This Court disagrees.

{¶25} To establish a prima facie case of retaliation, an employee must demonstrate (1) that she was engaged in a protected activity, (2) that the employer knew of her participation in the activity, (3) that she was subjected to adverse employment action, and (4) that "there is a causal link between the protected activity and the adverse employment action." *Varner v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 21901, 2004-Ohio-4946, ¶ 10, quoting *Wade v. Maxwell Util. Bd.*, 259 F.3d 452, 463 (6th Cir.2001). A causal connection is only established where the employee has presented evidence "sufficient to raise an inference that the protected activity was the likely motivation for the adverse action." *Varner* at ¶ 11, citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir.1997).

{¶26} On appeal, Ms. Jaber argues that the protected activity in which she engaged was disclosing that she had worked off the clock and that she was thereafter subjected to intermediate disciplinary action and closely scrutinized. She has not alleged a cause of action in her complaint in this regard. Rather, she alleged two retaliation claims: (1) retaliation (harassment and ultimate discharge) for complaining that she had not been paid for overtime hours she worked (first claim for relief), and (2) retaliation for raising the issue that she believed that the

bank was discriminating against her on the basis of age, national origin, and perceived disability (fifth claim for relief).

{¶27} Although Ms. Jaber alleged in her first claim for relief that FirstMerit refused to pay her for overtime hours after she requested that the bank do so, the only evidence presented on this issue was that, upon learning that Ms. Jaber had worked unauthorized overtime, the bank directed her four times to disclose the number of hours she worked so it could pay her. Ms. Jaber delayed providing an itemization of hours, averring instead that she was not seeking payment, and she had donated that time, and that she only wanted the bank to know what a hard worker she was. In any event, Ms. Jaber did not respond to the defendants' motions for summary judgment in regard to their arguments and evidence pertaining to the first claim for relief. "A party who fails to call a claimed error to the trial court's attention at a time when it can be avoided or corrected forfeits the right to argue that error on appeal." *GMS Mgt. Co. v. Nguyen*, 9th Dist. Wayne No. 08CA0014, 2008-Ohio-6574, ¶ 13. As Ms. Jaber failed to oppose the defendants' motions for summary judgment in regard to her first claim for relief alleging retaliation, she has forfeited that issue on appeal.

{¶28} To the extent that Ms. Jaber argues that she was "hounded by her supervisors" and "denied any help" despite that "it was clear that she was overworked and under distress," she only raises retaliation with regard to her perceived disability. Although she noted open heart surgery and her carrying nitroglycerin nearly a decade before her termination, she only addresses stress on appeal.

{¶29} FirstMerit acknowledged that Ms. Jaber raised a concern about discrimination in an email after she had been notified of her violation of the LCM and pending review by the PRC. Although she was ultimately terminated, the bank presented evidence that her discharge was

predicated on repeated disregard for directives not to work off the clock and ongoing, serious customer complaints and security violations. Ms. Jaber's email raising a question of discrimination was vague and did not identify any type of discrimination or offer any support for her speculative inquiry. In her opposition to the motions for summary judgment, Ms. Jaber notes that "she raised her concern about discrimination" but that she "did not set out a legal claim." She failed to present any evidence tending to show how her termination was in retaliation for raising an issue of discrimination based on a perceived disability. As there was no genuine issue of material fact, the trial court did not err by granting summary judgment in favor of the defendants on her fifth claim for relief.

{¶30} Ms. Jaber's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED IN ORDERING SUMMARY JUDGMENT ON [MS. JABER'S PUBLIC POLICY CLAIM OF WORKPLACE BULLYING AS A LEGITIMATE BASIS FOR WRONGFUL DISCHARGE WHERE AN EMPLOYER TARGETS AN EMPLOYEE FOR ADVERSE TREATMENT GUARANTEED TO MAKE HER FAIL.

{¶31} Ms. Jaber argues that the trial court erred by granting summary judgment in favor of the defendants' on her claim alleging a public policy violation premised on bullying. This Court disagrees.

{¶32} To establish a claim for wrongful termination in violation of public policy, an employee must demonstrate "1. [t]hat [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element)[,] 2. [t]hat dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element)[,] 3. [t]he plaintiff's dismissal was motivated by conduct related to the public policy (the *causation*

element)[, and] 4. [t]he employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element)." (Emphasis in original.) *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70 (1995), quoting H. Perritt, *The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie?*, 58 U.Cin.L.Rev. 397, 398-399 (1989).

{¶33} Jaber concedes that no public policy claim regarding workplace bullying exists under Ohio law. Instead, she argues for an expansion of the protections accorded to at-will employees in furtherance of an "employer's obligation to provide a safe workplace." Although her argument is not well developed, she premises it on "the notion of diversity recognition and inclusion and fundamental decency." She does not clarify what she means by diversity beyond the issues of age, national origin, and perceived disability, all of which constitute statutorily express protected classes. This Court has resolved those arguments above.

{¶34} To the extent that Ms. Jaber references fundamental decency, the United States Supreme Court has recognized that Title VII (and by analogy state antidiscrimination laws) are not "general civility code[s]." *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998). Instead, hostility in the workplace is judged by "sufficiently demanding * * * standards" to avoid such unwarranted expansion. *Id.* Although it addressed sexual hostility in the workplace, *Faragher* noted that "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not rise to the requisite level of protection. *Id.*

{¶35} Although Ms. Jaber refers to "systematic treatment" by FirstMerit's management, she notes only a denial of time off in July 2011 and "a barrage of criticism." She fails to acknowledge, however, that she had requested time off with very little notice and was ultimately allowed to take several days off. Moreover, she makes only a vague reference to "criticism." The record, however, contains multiple examples of ongoing customer service, security, and

work hours issues, to which Ms. Jaber admitted. Under these circumstances, this Court is not persuaded to expand the current state of the law to recognize a claim for a violation of public policy on the basis of bullying.

{¶36} Finally, even if we were to recognize such a claim, the evidence demonstrates that FirstMerit had an overriding legitimate business justification for terminating Ms. Jaber based on her admitted ongoing violations of company policies and procedures. Accordingly, the trial court did not err in granting summary judgment in favor of the defendants on Ms. Jaber's sixth claim for relief. The fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED IN ORDERING SUMMARY JUDGMENT IN FAVOR OF INDIVIDUAL APPELLEES EHRICH, PERRY[,] AND O'BRIEN.

{¶37} Ms. Jaber argues that the trial court erred by granting summary judgment in favor of Ms. Ehrich, Ms. Perry, and Ms. O'Brien on her claims. This Court disagrees.

{¶38} The parties agree that it is well settled that, for purposes of R.C. 4112.01 antidiscrimination claims, "individual supervisors and managers are accountable for their own discriminatory conduct occurring in the workplace environment." *Genaro v. Cent. Transport, Inc.*, 84 Ohio St.3d 293, 300 (1999); *Price v. Carter Lumber Co.*, 9th Dist. Summit No. 24991, 2010-Ohio-4328, ¶ 25. The term "employer" includes "any person acting directly or indirectly in the interest of an employer." R.C. 4112.01(A)(2).

{¶39} As district manager, branch manager, and assistant branch manager, Ms. Ehrich, Ms. O'Brien, and Ms. Perry, respectively, acted directly or indirectly in the interest of FirstMerit. Ms. Jaber alleged that each engaged in discriminatory acts against her based on her age, national origin, and perceived disability, that they retaliated against her for complaining about overtime and a lack of time off, and that they violated public policy by harassing her in a way that

amounted to bullying. This Court has already declined to extend the current state of the law to recognize a violation of public policy claim based on bullying.

{¶40} The prima facie elements for the remaining claims are set out above.

{¶41} Ms. Jaber's retaliation claims against the individual managers fail. Her first claim for relief alleged retaliation for complaining that she had not been paid for overtime she worked. However, she presented no evidence in that regard and, in fact, the evidence demonstrated only that she did not seek payment for overtime hours she had worked off the clock.

{¶42} Her other retaliation claim alleges only that her employer retaliated against her for complaining that she had faced discrimination based on age, national origin, and perceived disability. She argues on appeal, however, that the three managers retaliated against her, not for complaining about age, national origin, or perceived disability discrimination, but rather for disclosing that she had worked off the clock, for requesting time off, and for not completing her work in a 40-hour work week. She described the retaliatory acts as depriving her of help, shouting at her in public areas of the bank, and writing her up for infractions. It is axiomatic that a plaintiff can only obtain relief based on claims she has actually alleged. The only time Ms. Jaber raised the issue of discrimination was in her email to human resources officer Amanda Pruett after she received notice that she had violated her LCM. Although she copied Ms. Ehrich on the email, the only adverse employment action that occurred after her speculation regarding discrimination was her termination. Neither Ms. Ehrich, Ms. O'Brien, nor Ms. Perry had any involvement in the decision to terminate Ms. Jaber. None of those managers sat on the PRC which was solely responsible for Ms. Jaber's discharge. As Ms. Jaber presented no evidence that any of the three managers engaged in any retaliatory conduct after she raised the issue of

discrimination, there was no genuine issue of material fact, and the three managers were entitled to judgment as a matter of law on Ms. Jaber's retaliation claims.

{¶43} As to the discrimination claims, as an initial matter, there is no evidence that Ms. Perry subjected Ms. Jaber to any adverse employment action. Ms. Perry testified during her deposition that she had no input into performance appraisals or disciplinary actions. She further had no authority to terminate, and she did not recommend Ms. Jaber's termination. Ms. Perry's signature is not on any disciplinary document in the record. Ms. Jaber has not presented any evidence to show that Ms. Perry subjected her to any adverse employment action, such as probation or other discipline, or played any role in her termination. Accordingly, Ms. Jaber failed to establish a prima facie case of discrimination against Ms. Perry.

{¶44} Regarding her claims alleging discrimination based on age, national origin, and perceived disability as against Ms. Ehrich and Ms. O'Brien, this Court assumes for the sake of argument that the evidence demonstrated a genuine issue of material fact as to Ms. Jaber's establishment of her prima facie cases.

{¶45} The burden then shifts to the managers to present legitimate, nondiscriminatory reasons for their adverse employment actions. Both Ms. Ehrich and Ms. O'Brien signed various disciplinary documents regarding Ms. Jaber, although neither played any role in her ultimate termination. In issuing a written warning (signed by both Ms. Ehrich and Ms. O'Brien), memorandum of "Doc Discussion" (signed only by Ms. O'Brien), LCM (signed by Ms. Ehrich and another person not named in this lawsuit), and a memorandum of violation of the LCM (signed by Ms. Ehrich and a human resource officer not named in this lawsuit), Ms. Ehrich and Ms. Perry thoroughly delineated the bases for each disciplinary action. The managers used progressive discipline, even declining to escalate the adverse action when additional customer

service issues came to light very shortly after the issuance of the written warning. Instead of notifying her of a violation of her 90-day probationary period and subjecting her to greater adverse action, Ms. O'Brien chose to de-escalate the discipline, merely documenting her discussion with Ms. Jaber about the additional concerns. As Ms. Jaber continued to disobey directives and fail to follow through on customer service actions, management imposed harsher disciplinary actions. Accordingly, Ms. Ehrich and Ms. O'Brien presented evidence of legitimate, nondiscriminatory reasons for subjecting Ms. Jaber to discipline.

{¶46} Ms. Jaber failed to present evidence to rebut the evidence of legitimate, nondiscriminatory reasons. Specifically, she admitted repeatedly that she continued to disobey the directive not to work off the clock. Furthermore, she admitted to many instances when she failed to follow through or follow up on some action necessary to complete customer transactions. Although she zeroes in on two situations (a failure to obtain overdraft protection for Mr. "W.," and a failure to use the preferred file folders for a project), neither of those issues resulted in the written disciplinary actions taken by management. First, Ms. Jaber only argues that they "blamed" her for the situation with Mr. W., but she does not explain what type of adverse employment action she suffered as a result.

{¶47} Second, she argues that the file folders incident resulted in a "write-up * * * instrumental in showing that [she] was violating her last chance agreement [LCM]." A review of the LCM indicates that it was premised on Ms. Jaber's continuing disregard for the directive not to work off the clock and to contact security when she enters the building when no one else is present; and her failure, again, to ensure that her file cabinet containing confidential information was locked. A review of the memorandum noting her violation of the LCM indicates that it was premised on her continuing disregard for the directive not to work off the clock, as well as four

significant customer service issues, none of which involved any reference to the file folder incident. Accordingly, Ms. Jaber failed to present evidence to rebut the managers' evidence of legitimate, nondiscriminatory reasons for their use of adverse employment actions against Ms. Jaber.

{¶48} Although we need not address the issue of pretext based on Ms. Jaber's failure to present rebuttal evidence on the second prong of the *McDonnell Douglas* burden-shifting analysis, we note that Ms. Jaber has also failed to present any evidence of pretext. She admitted that she continued to disregard the directive not to work off the clock for months and after repeated warnings. She further admitted to multiple instances of poor customer service based on her failure to complete customer transactions. She challenges the significance of two incidents, neither of which are referenced in her disciplinary documents, and she does not assert that the remaining admitted deficiencies were insufficient to motivate the progressive disciplinary actions used by management. Accordingly, she has failed to create a genuine issue of material fact with regard to pretext.

{¶49} Based on the above discussion, there is no genuine issue of material fact as to the individual managers' liability. Accordingly, the trial court did not err by granting summary judgment in favor of Ms. Ehrich, Ms. O'Brien, and Ms. Perry on all of Ms. Jaber's claims. The sixth assignment of error is overruled.

IV.

{¶50} Ms. Jaber's six assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

MOORE, J.
CONCURS.

HENSAL, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

LINDA C. ASHAR, Attorney at Law, for Appellant.

WILLIAM S. HALBERG, Attorney at Law, for Appellant.

THOMAS R. CROOKES and ASHLEY M. MANFULL, Attorneys at Law, for Appellees.