[Cite as *Messer v. Summa Health Sys.*, 2018-Ohio-372.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

DARLENE MESSER

    Appellant

    v.

SUMMA HEALTH SYSTEM

    Appellee

C.A. No.     28470

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2015-11-5195

DECISION AND JOURNAL ENTRY

Dated: January 31, 2018

CALLAHAN, Judge.

{¶1}    Appellant, Darlene Messer, appeals the judgment entered in favor of Appellee, Summa Health System ("Summa"), in the Summit County Court of Common Pleas. For the reasons set forth below, this Court affirms.

I.

{¶2}    Summa hired Ms. Messer on June 29, 2015 as a special procedures technologist in the interventional radiology department at its Barberton Hospital facility. In this position, Ms. Messer assisted doctors and others on medical procedures involving the veins and arteries of patients. Ms. Messer was employed for approximately one month before being terminated.

{¶3}    Upon being hired, Ms. Messer received Summa's employee handbook. Contained within the handbook was a provision on probationary employment which permitted Summa to terminate an employee within the first 90 days of employment without notice.

{**¶4**}    At the time of Ms. Messer's employment, Summa had a policy requiring all technicians in the interventional radiology department to change in and out of hospital-issued scrubs at the beginning and end of the shift, either in the unisex locker room or in the bathroom located inside the locker room.  Doctors and nurses also used the unisex locker room, but had different policies regarding scrubs.  Both the locker room and its bathroom could be locked. Ms. Messer did not agree, nor comply with the changing policy.  She wore her own scrubs instead of the hospital-issued scrubs.  She wore the scrubs home at the end of her shift instead of changing into street clothes.  When she did change her clothes, she would use the public restroom instead of the unisex locker room or its bathroom.

{**¶5**}    Ms. Messer claims that on one occasion, she walked in on a male employee who was changing in the unisex locker room. Ms. Messer further claims she reported this incident to three of her co-workers and to team leader L.M., but these verbal reports were unconfirmed.  Ms. Messer did not file a written report.

{**¶6**}    After the first incident, Ms. Messer claims to have stopped using the unisex locker room.  Yet, according to Ms. Messer, a few days later she was changing in the locker room when someone began to walk-in. She immediately shouted for the person to leave and he/she did.  Ms. Messer never saw the person and, thus, does not know if it was a male or female.  Again, Ms. Messer claims to have reported this second incident to two of her co-workers and to team leader L.M., yet these verbal reports are also unconfirmed. Ms. Messer also did not file a written report for the second incident.

{**¶7**}    Sometime during her one-month employment, Ms. Messer's co-worker K.T., team leader L.M., and supervisor S.B., all met with her and addressed the fact that her job performance and knowledge did not correspond to the skills and background she had listed in her

resume. Shortly thereafter, Ms. Messer was counseled twice by team leader L.M. about wearing the hospital-issued scrubs, wearing personal scrubs home, and not using the public restroom to change clothes.

{¶8} As to her resume, Summa claims it discovered after Ms. Messer was hired that she had not disclosed her previous employment with Akron General Medical Center. During the interview, supervisor S.B. took notes on Ms. Messer's resume. The handwritten notes indicate "medical issues – temp position[,] interventional cath[.,] St[.] Vincent vasc[.,], UH PT currently." Ms. Messer faults S.B. for not asking follow-up questions regarding who the employer was for the temporary position. Supervisor S.B.'s expectation was that Ms. Messer's resume would include all of her employment history, relevant and non-relevant to the posted position.

{¶9} Ms. Messer testified that she did not include the Akron General Medical Center information because it was a "term position" and averred that she "tailor[ed] the experience in the resume to meet the posted requirements for the job [she was] seeking." Despite her assertion that the resume was "tailor[ed]" for the interventional vascular technologist position at Summa, the resume included a position at W.F. Hann and Sons where Ms. Messer worked as an "Accounting Administrator" and "[h]andled all clerical and accounting functions."

{¶10} On July 28, 2015, the day before Ms. Messer's termination, she requested permission from supervisor S.B. to leave work early. S.B. asked Ms. Messer how many of the required HealthStream courses she still needed to complete. Ms. Messer indicated that she only had two courses that needed to be completed and was granted permission to leave early based on her representation. After Ms. Messer had left work, S.B. learned from the education department that Ms. Messer, in fact, had five courses remaining. Ms. Messer claimed that she had answered

truthfully because she had watched a couple of the courses, but deferred taking the tests until the next day, which she did. In Ms. Messer's opinion, watching the courses was the same as completing the courses because the tests only took "three minutes to do." However, S.B. viewed Ms. Messer's representation to be false.

{¶11} On that same day, Ms. Messer was involved in a procedure that resulted in a hematoma to a patient. Summa contends the injury to the patient was a result of a mistake made by Ms. Messer during the procedure. Ms. Messer asserts the mistake was not her fault, but the fault of the other medical personnel because they did not provide her with the necessary equipment.

{¶12} The following day, Ms. Messer met with team leader L.M. and supervisor S.B. for an exit interview. During this meeting, S.B. advised Ms. Messer that her employment was being terminated within the 90-day probationary period. The reasons for her termination were recorded on the Summa New Employee/Internal Transfer Probationary Evaluation Form ("Termination Form"). Both Ms. Messer and supervisor S.B. signed the Termination Form.

{¶13} In response to her termination, Ms. Messer filed a complaint alleging gender discrimination under R.C. 4112.02(A) based on sexual harassment, retaliatory discrimination under R.C. 4112.02(I), and aiding, abetting, inciting, compelling, or coercing an unlawful discriminatory act under R.C. 4112.02(J). Summa filed a motion for summary judgment. The trial court granted Summa's motion for summary judgment on all three claims. Ms. Messer timely appeals this judgment.

{¶14} Contrary to App.R. 12(A)(2) and App.R. 16(A), Ms. Messer has asserted three assignments of error and argued them jointly because, in her view "[a]ll [of the] [a]ssignments of [e]rror are [b]ased upon a common fact and law argument." While Ms. Messer is essentially

arguing the trial court erred in granting summary judgment in favor of Summa in each assignment of error, the facts and law are not common because there are three separate causes of action and there are procedural arguments being asserted. This Court agrees with Summa that Ms. Messer's improper briefing method has "present[ed] a convoluted legal analysis." For ease of discussion, this Court will reorder and address the assignments of error individually.

II.

### ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY CREDITING [SUMMA'S] CONTRADICTED AND OPINION EDITED VERSION OF [THE] FACTS ON [THE] MOTION FOR SUMMARY JUDGMENT.

{¶15} In her second assignment of error, Ms. Messer argues that the trial court erred by rejecting her affidavit and by failing to consider the deposition transcripts of the Summa employees that she filed and, thereby, prejudiced her.

### Ms. Messer's Affidavit

{¶16} Ms. Messer asserted that the standard of review for all of her assignments of error is de novo. She is incorrect. In the second assignment of error, Ms. Messer challenges the trial court's determination that her affidavit contradicted her deposition testimony without any explanation and, thus, did not consider the affidavit. A trial court's decision whether to strike an affidavit is reviewed under an abuse-of-discretion standard. *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 223 (1994). It is also an abuse of discretion to strike the entire affidavit when there are portions that are properly before the court. *See Wesley v. Walraven*, 4th Dist. Washington No. 12CA18, 2013-Ohio-473, ¶ 27, quoting *Wall v. Firelands Radiology*, 106 Ohio App.3d 313, 335 (6th Dist.1995). "A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by

evidence, or grossly unsound." (Citations and quotation marks omitted.) *Tustin v. Tustin*, 9th Dist. Summit No. 27164, 2015-Ohio-3454, ¶ 21.

**{¶17}** Ms. Messer argues that the trial court improperly disregarded her entire affidavit. While the trial court only specifically addressed an alleged discrepancy between Ms. Messer's deposition testimony and paragraph 5 of her affidavit, it generally concluded that "[s]he ha[d] merely asserted bald allegations by way of her contradictory affidavit" and would "not consider the affidavit or find that it creates a genuine issue of material fact where these matters [were] concerned." Because the trial court struck Ms. Messer's entire affidavit, this Court will review the propriety of that action before addressing the merits of the motion for summary judgment.

**{¶18}** "An affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat the motion for summary judgment." *Byrd v. Smith,* 110 Ohio St.3d 24, 2006-Ohio-3455, paragraph three of the syllabus; *see Craddock v. Flood Co*., 9th Dist. Summit No. 23882, 2008-Ohio-112, ¶ 15. In that instance, the trial court must engage in a two-part analysis of the inconsistent affidavit. *Craddock* at ¶ 15. First, the trial court "must determine whether the statements in the affidavit contradict or merely supplement the affiant's earlier testimony." *Id*. Second, the trial court must decide whether the affiant has presented "a sufficient explanation for the inconsistency." *Id*.

**{¶19}** Here, the trial court based its decision not to consider Ms. Messer's affidavit solely on the contents of paragraph 5, which stated as follows:

> While I was employed at Summa [], I was required to use a common access, unisex locker room by my supervisor [L.M.] and her supervisor [S.B.] to change my clothes in before starting my work shift and afterwards. I objected and refused to use the room as I am uncomfortable, offended[,] and embarrassed when I am caught in a state of undress by total strangers who are men while changing my clothes and I am put into a position where I have to walk in on others[,]

including men[,] while they are changing clothes when I have to use the unisex locker room in issue.

The trial court interpreted this paragraph to mean that Ms. Messer "was caught half-dressed on multiple occasions and that there were multiple times when she walked in on males while they were changing." The trial court explained that Ms. Messer's deposition testimony, however, only identified two incidents. The trial court adopted Summa's rationale that Ms. Messer's affidavit indicated multiple incidents and this contradicted her deposition testimony of two incidents.

{¶20} Ms. Messer argues the word "multiple" is not in her affidavit and thus the trial court erred in interpreting her affidavit to say multiple incidents. While this Court agrees that "multiple" does not appear in her affidavit, the trial court's interpretation of paragraph 5 of the affidavit as describing "multiple" incidents is proper. "[M]ultiple" is defined as "more than one." *The Merriam-Webster Dictionary* 325 (New Ed.2005). The affidavit describes two different scenarios, thus it describes multiple incidents. Similarly, Ms. Messer testified to two different incidents, which also equates to multiple incidents. Thus, Ms. Messer's affidavit is consistent with her deposition testimony. Because paragraph 5 of the affidavit did not conflict with Ms. Messer's deposition testimony, the trial court erred in not considering this paragraph of the affidavit.

{¶21} Upon review of an affidavit, a trial court may strike only the portion of the affidavit that is inadmissible. *See Wesley*, 2013-Ohio-473, at ¶ 27. Here, the trial court rejected the entire affidavit as containing only "bald allegations" that were "contradictory" to her deposition testimony. There was no additional analysis as to how the remaining paragraphs of the affidavit were contradictory to the deposition testimony. Accordingly, the trial court erred in

not considering the entire affidavit based solely on its analysis that paragraph 5 of the affidavit was inadmissible.  *See Wesley* at ¶ 27.

{¶22}  While Ms. Messer has shown that the trial court erred in striking her entire affidavit, she has failed to support her claim of prejudice resulting from that error.  The appellant bears the burden of affirmatively demonstrating the error on appeal and substantiating his or her arguments in support. App.R. 16(A)(7); Loc.R. 7(B)(7). "Claimed error alone may not support reversal; the party assigning error must demonstrate prejudice resulting therefrom." *Cincinnati Ins. Co. v. Thompson & Ward Leasing Co.*, 158 Ohio App.3d 369, 2004-Ohio-3972, ¶ 19 (10th Dist.), citing *Smith v. Flesher*, 12 Ohio St.2d. 107 (1967), paragraph one of the syllabus.

{¶23}  Further, the statements put forth by Ms. Messer in her affidavit were also contained in the deposition transcripts. Therefore, Ms. Messer has failed to show that the erroneous exclusion of the cumulative information contained within her affidavit affected the trial court's decision to enter judgment in Summa's favor. Consequently, the erroneous exclusion of Ms. Messer's affidavit did not affect the substantial rights of the parties and, thus, constituted harmless error that this Court must disregard.  *See* Civ.R. 61.

**Deposition Transcripts**

{¶24}  Ms. Messer argues that the trial court did not consider any of the four depositions that she submitted as evidence to establish the existence of a genuine issue of material fact. "'[A] trial court's ruling on the use of the deposition of a witness is reviewed under an abuse-of-discretion standard.'" *Clinton v. Faurecia Exhaust Sys.*, 2d Dist. Miami No. 2012-CA-1, ¶ 26, quoting *Bishop v. Admr., Bur. of Workers' Comp.*, 146 Ohio App.3d 772, 787 (10th Dist.2001).

{¶25}  Ms. Messer's argument is wholly without merit. The trial court set forth seven instances in its judgment entry of "uncontroverted evidence that [Ms. Messer] was terminated *

* * for reasons unrelated to any of her claims." The trial court indicated the source for each of the seven points. While the bulk of the support for the trial court's decision came from Ms. Messer's deposition, the trial court also relied upon the depositions of human resource representative E.H, team leader L.M., and supervisor S.B. These three depositions were produced by Ms. Messer in opposition to Summa's summary judgment motion. Thus, contrary to Ms. Messer's position, the trial court did consider the deposition transcripts she submitted.

{¶26} Ms. Messer also argues that Summa's conduct in submitting only a partial transcript of her testimony amounted to "severe editing of the record" and she avers that she was prejudiced by the "absence [of] the full context of [her] deposition answers." (Emphasis deleted.) Ms. Messer overlooks the fact that she could have remedied any prejudice by filing a complete copy of the transcript herself. Moreover, Ms. Messer does not provide this Court with any case law or rule to support her position that the entire transcript should be filed. "An appellant bears the burden of formulating an argument on appeal and supporting that argument with citations to the record and to legal authority." *State v. Watson*, 9th Dist. Summit No. 24232, 2009-Ohio-330, ¶ 5, citing App.R. 16(A)(7). Thus, pursuant to App.R. 16(A)(7), this Court declines to address this argument.

{¶27} Ms. Messer's second assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY GRANTING [SUMMA'S] MOTION FOR SUMMARY JUDGMENT ON ALL CAUSES OF ACTION IN THE CASE SUB JUDICE.

{¶28} In her first assignment of error, Ms. Messer asserts that the trial court erred in granting summary judgment as to all of her claims. This Court disagrees.

**Summary Judgment Standard**

{¶29} Appellate courts consider an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court uses the same standard that the trial court applies under Civ.R. 56(C), viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *See Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983). Accordingly, this Court stands in the shoes of the trial court and conducts an independent review of the record.

{¶30} Summary judgment is proper under Civ.R. 56 when: (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can only reach one conclusion, and that conclusion is adverse to the non-moving party. Civ.R. 56(C); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶31} Summary judgment consists of a burden-shifting framework. The movant bears the initial burden of demonstrating the absence of genuine issues of material fact concerning the essential elements of the non-moving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* at 292-293. Once the moving party satisfies this burden, the non-moving party has a reciprocal burden to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293. The non-moving party may not rest upon the mere allegations or denials in his pleadings, but instead must submit evidence as outlined in Civ.R. 56(C). *Id.* at 293; Civ.R. 56(E). Additionally, expressions of speculation or assumptions in

deposition testimony and affidavits are insufficient to sustain the non-movant's burden. *See Dailey v. Mayo Family Ltd. Partnership*, 115 Ohio App.3d 112, 117 (7th Dist.1996).

**Gender Discrimination Based on Sexual Harassment**

{¶32} The parties agree that Ms. Messer is asserting a claim for gender discrimination arising out of sexual harassment in a hostile work environment and that *Hampel v. Food Ingredients Specialties*, 89 Ohio St.3d 169 (2000), sets forth the applicable test. Ms. Messer argues that there are genuine issues of material fact as to this cause of action. This Court disagrees.

{¶33} R.C. 4112.02(A) makes it an unlawful discriminatory practice "[f]or any employer, because of the * * * sex * * * of any person, * * * to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." The Ohio Supreme Court has "determined that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196 (1981).

{¶34} Further, the Ohio Supreme Court has held that under R.C. 4112.02(A) a plaintiff can establish discrimination "'because of * * * sex'" under one of two sexual harassment theories: "'quid pro quo' harassment" or "'hostile environment' harassment." *Hampel* at paragraph one of the syllabus. "'[H]ostile environment' harassment," unlike "'quid pro quo' harassment," does "not affect[] economic benefits, [but instead] has the purpose or effect of creating a hostile or abusive working environment." *Id*. To sustain a hostile work environment sexual harassment claim, the plaintiff must prove all of the following elements:

(1) that the harassment was unwelcome,

(2) that the harassment was based on sex,

(3) that the harassing conduct was sufficiently severe or pervasive to affect "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and

(4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

*Hampel* at paragraph two of the syllabus. Summa's summary judgment motion addressed the second and third prongs.

### Harassment based on sex – causation element

{¶35} An essential requirement in a sexual harassment claim is "[h]arassment 'because of * * * sex.'" *Hampel* at 178. Sexual harassment can be based upon the gender of a person or behaviors associated with sexual gratification. *Id*. Thus, sexual harassment can exist when the abusive actions are void of any sexual element but directed to an employee based on the individual's gender. *Id*.; *see Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998). A female plaintiff must show that she was treated differently or with greater hostility because she is a woman. *See Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 261 (4th Cir.2001). Thus, Ms. Messer must show that, but for the fact of her gender, she would not have been the object of harassment. *See Hampel* at 178; *Oncale* at 81 (A plaintiff must prove the conduct "actually constituted 'discrimination * * * because of * * * sex.'"). (Emphasis deleted.)

{¶36} Ms. Messer argued that Summa required, as a condition of her employment, that she change from her street clothes into hospital issued scrubs in a unisex locker room. Ms. Messer was "offended" because she viewed this policy as "a violation of her personal privacy based upon gender." According to Ms. Messer, the mandatory use of the unisex locker room was abusive conduct creating a hostile work environment. Ms. Messer argues that the conduct was

abusive because women have a greater expectation of privacy in their bodies than men and, thus, the conduct was directed towards her based on her being a woman.

**{¶37}** Ms. Messer's reliance on *Livingwell, Inc. v. Pennsylvania Human Relations Comm.*, 147 Pa.Commw. 116 (1992), for the proposition that females have a heightened privacy interest in their bodies is misplaced. In *Livingwell*, a health fitness club was sued for violating the Pennsylvania Human Relations Act by prohibiting men from being customers or employees in their all-women facilities. *Id.* at 118. Contrary to Ms. Messer's overriding theme, *Livingwell* does not stand for the proposition that women have a heightened sense or right to privacy over men. *See id*. at 128-129.  *Livingwell* addressed the issue of customer gender privacy as a defense and the requirement that the defendant show a factual basis for excluding males from its all-female facilities.  *Id.* at 120-123. The court's analysis in *Livingwell* has no application to the facts in this case.

**{¶38}** Ms. Messer also relied upon *Washington v. White*, 231 F.Supp.2d 71 (D.C.Dist.2002), for the proposition that "where the [p]laintiff complain[ed] his or her right of privacy was invaded" there was sexual harassment.  In *Washington*, the plaintiff, a male custodial worker, complained that the female work leader entered the men's locker room, unannounced, five to ten times while the male employees were changing clothes and showering. *Id*. at 80.  The female worker's actions were in contravention to the written policy prohibiting women in the men's locker room. *Id*. at 81.  In response to the plaintiff's complaint, the female worker returned to the men's locker room and accosted the plaintiff.  *Id*. at 80-81.  The court found this was evidence creating a genuine issue of material fact regarding a hostile work environment. *Id*. at 81.

{¶39} *Washington* is distinguishable from the instant case because it involved a different expectation of privacy. The male plaintiff in *Washington* had an expectation of privacy because he was using a single sex locker room. *See id.* at 80. This case involves a unisex locker room, where both men and women are permitted and, in fact, are required to use the designated space for changing into hospital issued scrubs. Unlike *Washington*, the presence of the opposite sex in the locker room is not in violation of a policy. *See id.* at 81. Moreover, the unisex locker room allows an employee to protect his or her personal privacy interest because the door can be locked by any staff member who uses the room, as evidenced by team leader L.M.'s deposition testimony of an occasional line waiting to get inside the locker room.

{¶40} Summa argued in its summary judgment motion that Ms. Messer "cannot claim that she was singled-out based on her gender in being provided this locker room because all employees, male and female, were granted access to it."   In her opposition to summary judgment, Ms. Messer found this argument to be "outrageous" and cited two cases, *Bennett v. Corroon & Black Corp.*, 845 F.2d 104 (5th Cir.1988) and *Barbetta v. Chemlawn Servs. Corp.*, 669 F.Supp. 569 (W.D.N.Y.1987), neither of which refuted Summa's argument.

{¶41} *Bennett* concerned sexually explicit drawings containing the plaintiff's name hanging in the men's public bathroom in the office building. *Bennett* at 105. *Barbetta* concerned evidence of pornography depicting naked females, vulgar comments to women, a requirement that females wear skirts or dresses so that a supervisor could look at their legs, and females receiving unwanted physical contact of a sexual nature by a male employee. *Barbetta* at 572-573. Both of these cases addressed sexually explicit conduct as opposed to gender neutral conduct. Accordingly, *Bennett* and *Barbetta* are inapplicable to the facts in this case.

**{¶42}** Ms. Messer concedes that a work "environment which is equally harsh for both men and women * * * does not constitute a hostile working environment under the civil rights statutes." *Brennan v. Metro. Opera Assn.* 192 F.3d 310, 318 (2d Cir.1999). Ms. Messer then argues for the first time on appeal the test and exceptions to the gender-neutral conduct defense. This argument is different from those contained in her opposition to summary judgment. "Arguments that were not raised in the trial court cannot be raised for the first time on appeal." *JPMorgan Chase Bank, N.A. v. Burden*, 9th Dist. Summit No. 27104, 2014-Ohio-2746, ¶ 12. Accordingly, this Court will not consider this portion of her argument.

**{¶43}** Ms. Messer testified that the locker room was used by both male and female employees and she averred that she felt "uncomfortable, offended[,] and embarrassed" when she saw a male changing his clothes in the locker room and when a male walked in on her changing her clothes. Ms. Messer testified that she was ordered by team leader L.M. to use the locker room to change in and out of the hospital scrubs. Supervisor S.B. and co-worker K.T. testified that Ms. Messer was able to use the bathroom located inside the locker room to change her clothes. Ms. Messer acknowledged that there is a bathroom with a lock on the door located inside the locker room. Additionally, team leader L.M. testified that there was a lock on the locker room door that anyone could operate.

**{¶44}** Ms. Messer has not provided any evidence to indicate that the mandatory use of the unisex locker room was motivated by Ms. Messer's gender. There was no testimony or other evidence as to how the mandatory use of the unisex locker room discriminated against Ms. Messer based on her gender. Instead, the testimony established that the locker room policy did not single out either gender as it applied to all medical personnel, male and female. *See Oncale*, 523 U.S. at 80, quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)

(the critical issue is whether one sex is subject to more disadvantageous conditions than the other). Accordingly, Ms. Messer has failed to meet her *Dresher* burden of establishing the existence of a genuine issue of material fact as to the essential condition of a sexual harassment case, i.e., "[h]arassment 'because of * * * sex.'" *See Hampel*, 89 Ohio St.3d at 178.

**{¶45}** In light of this Court's analysis of the second element of a sexual harassment claim, the parties' arguments as to the other elements are moot. *See* App.R. 12(A)(1)(c). The trial court did not err in granting summary judgment as to the sexual harassment claim.

**Retaliatory Discrimination**

**{¶46}** R.C. 4112.02(I) defines retaliatory discrimination as

an unlawful discriminatory practice * * * [when] any person [] discriminate[s] in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under [R.C.] 4112.01 to 4112.07 [].

Federal case law regarding Title VII of the Civil Rights Act of 1964 generally applies to R.C. Chapter 4112 violations, including retaliatory discrimination claims. *See Varner v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 21901, 2004-Ohio-4946, ¶ 10, citing *Plumbers & Steamfitters Joint Apprenticeship Commt.*, 66 Ohio St.2d at 196.

**{¶47}** An employee must first establish a prima facie case of retaliation by demonstrating each of the following elements:

(1) that she was engaged in a protected activity,
(2) that the employer knew of her participation in the activity,
(3) that she was subjected to adverse employment action, and
(4) that "there is a causal link between the protected activity and the adverse employment action."

*Jaber v. FirstMerit Corp.*, 9th Dist. Summit No. 27993, 2017-Ohio-277, ¶ 25, quoting *Varner* at ¶ 10, quoting *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 463 (6th Cir.2001).

**{¶48}** If an employee establishes a prima facie case of retaliation, the burden then shifts to the employer to offer a legitimate, non-retaliatory business reason for its action. *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, ¶ 14. This is simply a burden of production. *Manofsky v. Goodyear Tire & Rubber Co.*, 69 Ohio App.3d 663, 667 (9th Dist.1990). Once the employer satisfies this burden, then the plaintiff must demonstrate that the proffered reason for the adverse employment action was pretext. *Greer-Burger* at ¶ 14. If the employer proffers multiple reasons, the employee must rebut each one to survive summary judgment. *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir.2007).

**{¶49}** In its motion for summary judgment, Summa argued that Ms. Messer failed to establish a prima facie case of retaliation, and further argued that Ms. Messer failed to establish pretext. If Summa is correct in either respect, then the other issue and the related arguments are moot. *See generally Williams v. Time Warner Cable*, 9th Dist. Summit No. 18663, 1998 Ohio App. LEXIS 2793, *6-7 (June 24, 1998) (an employer may seek summary judgment on either basis in a discrimination case). This Court begins its analysis with Ms. Messer's prima facie case of retaliation because we find it to be dispositive. *See* App.R. 12(A)(1)(c).

### Engaged in protected activity

**{¶50}** An employee engages in protected activity by opposing an unlawful discriminatory practice, "regardless of whether the conduct or policy * * * was, in fact, unlawful." *See Robinson v. Quasar Energy Group LLC*, 8th Dist. Cuyahoga No. 101062, 2014-Ohio-4218, ¶ 20; *Pintagro v. Sagamore Hills Twp.*, 9th Dist. Summit No. 25697, 2012-Ohio-2284, ¶ 13. In the employment context, an employee communicating her belief that the employer has engaged in discriminatory conduct constitutes protected activity. *See Robinson* at ¶ 19.

{¶51} Ms. Messer testified that she told team leader L.M. that she was uncomfortable changing in the unisex locker room because she "didn't want to see [a male's] butt and [she] didn't want [a male] seeing [hers]." Summa does not dispute that the content of such a complaint involves an allegation of discriminatory conduct. Instead, Summa disputes that Ms. Messer made such a complaint to L.M. Because of the parties' divergent testimony as to whether Ms. Messer voiced this complaint to L.M., there is a genuine issue of material fact as to the first element of retaliation, whether Ms. Messer engaged in protected activity.

### Knowledge of protected activity

{¶52} "The decision[]maker's knowledge of the protected activity is an essential element of the prima facie case of unlawful retaliation." *Frazier v. USF Holland, Inc.*, 250 Fed.Appx. 142, 148 (6th Cir.2007). An employer cannot make a retaliatory business decision when it is not aware of the protected activity at the time the decision was made. *See Carney v Cleveland Hts.-Univ. Hts. City School Dist.*, 143 Ohio App.3d 415, 430 (8th Dist.2001).

{¶53} In a summary judgment motion, the plaintiff can meet its burden regarding the employer's knowledge with either direct or circumstantial evidence. *See Meyers v. Goodrich Corp.*, 8th Dist. Cuyahoga No. 95996, 2011-Ohio-3261, ¶ 22. Direct evidence of the employer's knowledge normally exists when the adverse action is taken by the same supervisor to whom the employee made a complaint. *See Proffitt v. Metro. Govt. of Nashville & Davidson Cty.*, 150 Fed.Appx 439, 442 (6th Cir.2005), quoting *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir.2002). In the absence of direct evidence, knowledge may be inferred from the record. *Meyers* at ¶ 22. Circumstantial evidence can support a reasonable inference if it is comprised of "specific facts" and not merely "conspiratorial theories," "'flights of fancy, speculations,

hunches, intuitions, or rumors.'" *See Mulhall* at 552, quoting *Visser v. Packer Eng. Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir.1991).

**{¶54}** With regard to Ms. Messer's deposition testimony, Summa argued that her alleged complaint of sexual harassment to team leader L.M. was insufficient to show that Summa had knowledge of her protected activity. While Ms. Messer testified and averred in her affidavit that she complained many times to team leader L.M. that she was uncomfortable using the unisex locker room, a fact which L.M. denies, she did not testify or aver to having made this complaint to supervisor S.B. As to her co-workers, Ms. Messer testified that she told them about the two locker room incidents. However, she did not testify that she told her co-workers that the incidents made her feel uncomfortable about changing in the locker room.

**{¶55}** Supervisor S.B. testified that she completed the Termination Form and it was her decision to fire Ms. Messer. This is corroborated by team leader L.M.'s testimony that the Termination Form was not "[her] documentation," that she has never been in a supervisory role, and that her previous involvement in a discipline situation with another employee consisted of sitting in on the discipline and termination meetings.

**{¶56}** Further, supervisor S.B. testified, to repeated questioning, that she did not know that Ms. Messer "complained about having to use the unisex locker room, because she didn't like being walked in on." S.B.'s testimony was that the reason Ms. Messer was using the public restroom in lieu of the locker room to change did not interest her, so she never discussed the issue with her.

**{¶57}** The record does not reflect that team leader L.M. told supervisor S.B. about Ms. Messer's complaint. As to co-worker K.T., she testified that her only discussion with supervisor S.B. was to tell her that Ms. Messer was wearing scrubs home. Upon review of the evidence,

Ms. Messer has failed to demonstrate the existence of a genuine issue of material fact that someone other than supervisor S.B. made the decision to terminate Ms. Messer and that S.B. had direct knowledge of Ms. Messer's protected activity.

{¶58} Ms. Messer relies on circumstantial evidence to create an inference that supervisor S.B. had knowledge of Ms. Messer's protected activity. S.B. testified that shortly before Ms. Messer's termination, she learned from team leader L.M. that Ms. Messer was changing in the public restroom instead of the locker room. According to S.B., because she does not micromanage her staff, she deferred to team leader L.M. to counsel Ms. Messer on the prohibited use of the public restroom.

{¶59} Ms. Messer claims that the fact that supervisor S.B. "testified that [Ms. Messer] was told not to change in a public restroom [at the hospital] * * * leads us to infer [Ms. Messer] complained about having to change in the unisex locker room prior to her termination." (Emphasis deleted.) Ms. Messer is asking this Court to infer, first, that her conduct was a complaint and, second, that the substance of her complaint was that she was uncomfortable changing in the unisex locker room because she did not want to see males or have males see her changing. The record does not support either inference and is, therefore, insufficient to establish knowledge by supervisor S.B. of Ms. Messer's protected activity.

{¶60} While team leader L.M. brought the issue of changing in the public restroom to supervisor S.B.'s attention, in light of S.B.'s hands-off approach to management, the record only supports a finding that team leader L.M. was reporting a policy violation by Ms. Messer to S.B., and not that S.B. knew Ms. Messer complained about changing in the unisex locker room. Ms. Messer has failed to present any "specific facts" to support these inferences, and instead has improperly relied upon "'speculations, hunches, [or] intuitions.'" *See Mulhall*, 287 F.3d at 552,

quoting *Visser*, 924 F.2d at 659. Accordingly, Ms. Messer has failed to present evidence supporting the inference that supervisor S.B. knew of Ms. Messer's protected activity.

{¶61} In an attempt to infer knowledge upon supervisor S.B., Ms. Messer argues for the first time on appeal the "'cat's paw' liability analysis." Ms. Messer asserts that "an employer who commits [an] adverse action that constitutes retaliation may be found liable even if it is not personally aware of the protected activity of the [p]laintiff if it is shown the adverse act was caused by higher management's reliance on information produced by a subordinate employee who had a motive to retaliate against the plaintiff." However, Ms. Messer did not advance this argument to the trial court and cannot now raise it on appeal in the first instance. *Burden*, 2014-Ohio-2746, at ¶ 12. Accordingly, this Court will not consider this portion of her argument.

{¶62} Additionally, Ms. Messer's deposition testimony regarding the discussions during the exit interview does not create an inference of knowledge by supervisor S.B. Ms. Messer testified that, during the exit interview with team leader L.M. and supervisor S.B., she told them that "[changing in the locker room was] not something [she was] comfortable [] doing." Despite this general statement by Ms. Messer, supervisor S.B. did not inquire as to why Ms. Messer was uncomfortable, nor did Ms. Messer elaborate during the interview as to why she was uncomfortable. Based on Ms. Messer's limited testimony, in conjunction with supervisor S.B.'s testimony relative to the discussion during the exit interview, Ms. Messer has not presented any specific facts or evidence from which a reasonable jury could infer that supervisor S.B. knew of Ms. Messer's protected activity.

{¶63} Ms. Messer has not presented any direct evidence and the circumstantial evidence upon which she relies is speculative and does not support the inference that supervisor S.B. knew of Ms. Messer's protected activity when she was terminated. Accordingly, Ms. Messer has

failed to meet her *Dresher* burden of establishing the existence of a genuine issue of material fact that Summa had knowledge of Ms. Messer's protected activity.

{¶64} In light of this Court's analysis of the second element of a retaliation claim, the parties' arguments as to the other elements are moot. *See* App.R. 12(A)(1)(c). The trial court did not err in granting summary judgment as to the retaliatory discrimination claim.

## Aiding and Abetting an Unlawful Discriminatory Act Under R.C. 4112.02(J)

{¶65} Pursuant to R.C. 4112.02(J), the following conduct is another instance of an unlawful discriminatory practice:

> For any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice.

{¶66} In its summary judgment motion, Summa presented a single argument as to this cause of action: because no unlawful discriminatory act was committed,[1] Summa could not be liable under this statute. Ms. Messer responded that there was evidence creating a genuine issue of material fact as to unlawful discriminatory practices by Summa and that the "three women went out of their way to make sure [Ms. Messer] was terminated and the ground they picked, happened to be a violation of [R.C.] 4112.02(A) and (I)."

{¶67} As discussed above, Ms. Messer has failed to establish a genuine issue of material fact regarding her claims of gender discrimination arising from sexual harassment and retaliatory discrimination. Accordingly, there is no evidence regarding an unlawful discriminatory practice

---

[1] Ms. Messer argues Summa failed to meet its initial burden on summary judgment as to this cause of action because it only made a conclusory statement and did not rely on any evidence. To the contrary, Summa met its initial burden because it specifically indicated that it was relying on the arguments and evidence previously discussed in its brief to support its position that "no discriminatory act was committed."

under R.C. 4112.02(A)-(I) and Summa is entitled to judgment as a matter of law on this cause of action. *See Pittman v. Parillo*, Lucas C.P. No. CI0201402890, 2016 Ohio Misc. LEXIS 5839, *42 (May 31, 2016), citing *Woolf v. City of Streetsboro*, N.D.Ohio No. 5:09 CV 1570, 2010 U.S. Dist. LEXIS 110446, *48 (Oct. 18, 2010) ("As plaintiff has not established the elements of her sexual discrimination and sexual harassment claims, her claim for aiding and abetting sexual harassment under Ohio law also fails."). The trial court did not err in granting summary judgment as to the aiding and abetting an unlawful discriminatory act claim.

{¶68} Summa argues in the alternative that summary judgment should be affirmed on this count because the three employees of Summa who allegedly colluded to get Ms. Messer's employment terminated are not named parties. First, this argument is moot because the trial court's summary judgment was not overturned. Second, Summa did not present this argument to the trial court and it is thereby forfeited. *Burden*, 2014-Ohio-2746, at ¶ 12. ("Arguments that were not raised in the trial court cannot be raised for the first time on appeal.")

## Conclusion

{¶69} When considering all of the evidence presented, Ms. Messer failed to meet her *Dresher* burden of establishing the existence of a genuine issue of material fact regarding each of her causes of action. After considering the foregoing arguments, the trial court did not err by granting summary judgment in favor of Summa as against Ms. Messer. Ms. Messer's first assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY IN EFFECT DISMISSING [MS. MESSER'S] OHIO R[.]C[.] 4112.02(J) CAUSE OF ACTION FINDING THAT [MS. MESSER'S] EMPLOYMENT TERMINATION WAS FOR REASONS UNRELATED TO "ANY OF HER CLAIMS."

**{¶70}** In the third assignment of error, Ms. Messer argues that the trial court erred in granting summary judgment to Summa on her third cause of action when it "summarily dismiss[ed] [the claim] without any discussion."

**{¶71}** Ms. Messer did not develop an argument, nor has she cited any legal authority in support of her position that the trial court erred by not providing its reasoning when it granted summary judgment in favor of Summa on her third cause of action. "An appellant bears the burden of formulating an argument on appeal and supporting that argument with citations to the record and to legal authority." *Watson*, 2009-Ohio-330, at ¶ 5, citing App.R. 16(A)(7). Where an appellant fails to cite to any law supporting her assignment of error, it is not this Court's duty to create an argument for her. *See Cardone v. Cardone*, 9th Dist. Summit Nos. 18349, 18673, 1998 Ohio App. LEXIS 2028, *22 (May 6, 1998). ("If an argument exists that can support this assignment of error, it is not this court's duty to root it out."). Thus, pursuant to App.R. 16(A)(7), this Court declines to address this argument.

III.

**{¶72}** Ms. Messer's first and second assignments of error are overruled and this Court declines to address the third assignment of error. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
CARR, J.
CONCUR.

APPEARANCES:

MICHAEL T. CONWAY, Attorney at Law, for Appellant.

JAMES D. KUREK, Attorney at Law, for Appellee.